*Eric Brandt vs.*

*The City of Westminster, Colorado, et al.*

*Deposition of Paul E. Newton*

*September 17, 2015*



700 17th Street, Suite 1750
Denver, CO 80202
303-988-8470 (Office) 303-988-8478 (Fax)
SKReporting.com

Stevens-Koenig Reporting



EXHIBIT C

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
 3   _____
     ERIC BRANDT,
 4
     Plaintiff,
 5
     v.
 6
     THE CITY OF WESTMINSTER, COLORADO, a municipality;
 7   MAYOR HERB ATCHISON, in his official and individual
     capacity; WESTMINSTER POLICE OFFICER PAUL E. NEWTON,
 8   in his official and individual capacity;
 9   Defendants.
10   _____
11                                        COURT USE ONLY
12                                     _____
                                       Civil Action No.:
13                                     1:14-cv-02994-WYD-NYW
14   _____
15
                    DEPOSITION OF PAUL E. NEWTON
16
                         September 17, 2015
17
18   _____
19
20
21
22
23
24
25
```

Case 1:14-cv-02994-DDD-NYW   Document 26-3   Filed 11/17/15   USDC Colorado   Page 3 of 18

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 9

```
 1        A.   I had to contact him.
 2        Q.   What do you mean "contact him"?  Did
 3   you call him on your phone?
 4        A.   No, sir, I did not.
 5        Q.   What did you do?
 6        A.   I walked up and addressed him.
 7        Q.   By saying what?
 8        A.   Eric, you need to leave.
 9        Q.   Okay.  Why did you say that to Eric
10   Brandt?
11        A.   Because I received directions from the
12   Mayor, Mr. Atchison, to address the problem that was
13   occurring --
14        Q.   What was the --
15        A.   -- in the City council meeting.
16        Q.   What was the problem that was occurring
17   in the City council meeting?
18        A.   There was an interference in the lawful
19   process.
20        Q.   What was that interference with the
21   lawful process?
22        A.   The conduct of Eric Brandt.
23        Q.   What did Eric Brandt do that interfered
24   with the lawful process?
25        A.   Eric would not follow the decorum, the
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 10

1  procedures, and interfered with the procedures that
2  the mayor was attempting to implement.
3        Q.   Well, let me ask you about that.  What
4  was going on at the City council meeting that caused
5  Eric Brandt to be at a microphone talking?  What was
6  happening then?
7        A.   It was a normal meeting.  And it was
8  the section of the meeting when citizens are invited
9  at the mayor's pleasure to speak.
10       Q.   Okay.  So it's an open mike; is that
11  correct?
12       A.   Yes, sir.
13       Q.   Okay.  And everybody -- every citizen
14  who wants to gets five minutes to talk about whatever
15  they want to talk about; isn't that correct?
16       A.   I'm not sure.  Could you -- I'm sorry.
17       Q.   Well, have you listened to the tape or
18  reviewed the audio of the incident prior to your
19  coming here today?
20       A.   Yes.  Back in August.
21       Q.   Okay.  Would it refresh your
22  recollection if I played pieces of that audio from
23  that City council meeting?
24       A.   Yes, sir.
25       Q.   All right.  Let me do that right now.

Case 1:14-cv-02994-DDD-NYW Document 26-3 Filed 11/17/15 USDC Colorado Page 5 of 18

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 16

```
 1      A.   Possibly, yes.
 2      Q.   Okay.  Did Mr. Brandt leave?
 3      A.   Yes, sir.
 4      Q.   Did he leave voluntarily?
 5      A.   No, sir.
 6      Q.   Okay.  Did you arrest him?
 7      A.   Yes, sir.
 8      Q.   For what?
 9      A.   For violation of C.R.S. 18-9 of 108.
10      Q.   Trespass?
11      A.   No, sir.
12      Q.   Failure to obey an order?  What is it?
13      A.   That's disrupting lawful assembly.
14      Q.   Okay.
15      A.   And 18-9-110, I think the title of the
16   statute is public buildings interference, comma,
17   trespass.
18      Q.   Okay.  And do you know what happened to
19   those cases?
20      A.   Yes, sir.
21      Q.   What happened?
22      A.   I'm sorry, sir, I wouldn't call those
23   cases.
24      Q.   Well, did a case get filed?
25      A.   Yes, sir.
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 31

```
 1        Q.   Okay.  Was that disorderly?
 2        A.   No.  I would describe it as disruptive.
 3        Q.   He was just simply making his speech.
 4   He continued on with his speech, didn't he?
 5        A.   No, sir.
 6        Q.   Eric Brandt did not just simply
 7   continue on with his speech at that point?
 8        A.   That's not what I observed, sir.
 9        Q.   What did you observe?
10        A.   I observed his failure to follow the
11   process/procedure of the City council meeting that
12   the mayor was attempting to enforce.
13        Q.   Well, the mayor was just trying to shut
14   Eric Brandt up, clearly, that's what he was trying to
15   do.  You don't agree with that, do you?
16        A.   No, sir.
17        Q.   What was he trying to do?
18        A.   He was trying to maintain order in the
19   City council meeting.
20        Q.   I don't understand.  Where is the
21   disorder that caused the mayor to interrupt Eric
22   Brandt?  Eric Brandt was simply making a statement
23   about his protest, wasn't he?
24        A.   I'm not sure.  I wasn't listening to
25   Eric Brandt, sir.
```

Case 1:14-cv-02994-DDD-NYW  Document 26-3  Filed 11/17/15  USDC Colorado  Page 7 of 18

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 35

```
 1          Q.   So the remedy then should be if they
 2   can't hear it, they should put their fingers in their
 3   ears and let him say it, is that what you're saying?
 4          A.   No, sir.
 5          Q.   The mayor said -- he shut Eric Brandt
 6   up for what reason?
 7          A.   I don't believe he shut Eric Brandt up,
 8   sir.
 9          Q.   He removed him -- he had you remove him
10   from the room, didn't he, in the middle of a speech?
11          A.   Yes, sir.
12          Q.   Eric Brandt was in the middle of a
13   speech, right?
14          A.   Yes, sir.
15          Q.   You went to the podium and forcibly
16   removed him from the room, didn't you?
17          A.   I escorted him from the room, yes, sir.
18          Q.   By force, didn't you?
19          A.   I escorted him, yes.
20          Q.   By force, didn't you?
21          A.   Yes, sir.
22          Q.   Okay.  You arrested him; is that
23   correct?
24          A.   Yes, sir.
25          Q.   And you arrested him because the mayor
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 36

```
 1   wanted him arrested; is that correct?
 2            A.   No, sir.
 3            Q.   You arrested him because he wouldn't
 4   stop talking, and the mayor ordered him to stop
 5   talking; is that correct?
 6            A.   No, sir.
 7            Q.   And Eric Brandt would not leave, so you
 8   arrested him; is that correct?
 9            A.   Yes, sir.
10            Q.   Now, you understood from listening to
11   that tape and being there, that the mayor wanted him
12   to stop talking because the mayor did not believe
13   that he wanted to hear the content of Eric Brandt's
14   speech about Eric Brandt's protest, correct?
15            A.   Yes, sir.
16            Q.   All right.  And based on the content of
17   Eric Brandt's speech, the mayor ordered Eric Brandt
18   to leave the podium, correct?
19            A.   I don't know if I'd say the content,
20   sir.
21            Q.   The mayor said, We can't hear anything
22   you're saying about a pending lawsuit, right?
23            A.   Yes, sir.
24            Q.   And apparently, the mayor believed Eric
25   Brandt, first of all, had a pending lawsuit, right?
```

Case 1:14-cv-02994-DDD-NYW   Document 26-3   Filed 11/17/15   USDC Colorado   Page 9 of 18

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 41

1  what he was talking about was his protests in
2  Westminster?  Did you not hear those words?
3         A.  No, sir.  I -- I heard the words, but I
4  wasn't paying that close of attention.  I found his
5  speech disjointed, kind of difficult to follow.  I
6  tuned him out, as is -- I do, and focused on what the
7  mayor had to say.
8         Q.  Well, if the mayor told you, take your
9  Taser and tase Eric Brandt right now, would you have
10 done that?
11        A.  No, sir.
12        Q.  Why not?
13        A.  It would not have been appropriate.
14        Q.  Why not?  The mayor orders it, why is
15 that not appropriate?
16        A.  Because it goes in absolute contrast to
17 what I've been trained to do.
18        Q.  Okay.  And what you're trained to do is
19 use reasonable force, if you, as an individual
20 officer, believe reasonable force is necessary,
21 correct?
22        A.  Yes, sir.
23        Q.  Okay.  And if the mayor ordered you to
24 use excessive force, you would exercise your
25 independent judgment as a police officer and say,

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 42

1  Just because the mayor is telling me to tase him,
2  doesn't mean I'm going to do it, and in fact, I'm not
3  going to do that, right?
4           A.   Yes, sir.
5           Q.   Okay.  Now, in this situation, we have
6  a citizen exercising his rights under the First
7  Amendment to free speech and to petition his
8  government for redress of grievances?  That's what we
9  have here, isn't it?
10               MR. MARKS:  Object to the form of the
11 question.
12          A.   No, sir.
13          Q.   (By Mr. Lane)  No, we don't have that?
14 What do we have here?
15          A.   We have a City council meeting.  It is
16 a governmental meeting in a public building.  And as
17 a part of that meeting, it is understood, because
18 there is a -- for instance, there's a printed agenda
19 that they are going to follow in specific order.
20          Q.   Right.
21          A.   And it is the mayor's job to make sure
22 the -- as I see it, the agenda is followed.  And it
23 is his job there to make sure that order is
24 maintained.
25          Q.   Right.  Okay.

Case 1:14-cv-02994-DDD-NYW Document 26-3 Filed 11/17/15 USDC Colorado Page 11 of 18

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 45

1  protest he was talking about at this speech; isn't
2  that correct?
3       A.   Not at the time, no, sir.
4       Q.   Well, I've already asked you.  You
5  understood the reference to "I've protested with the
6  infamous middle finger for only 30 days"?  Do you
7  remember, I asked you about that?
8       A.   No, sir.
9       Q.   Well, I did, in this deposition.  And I
10 said, You understood what he's talking about, because
11 you've seen the sign with the big middle finger
12 extended saying, "Fuck cops," right?
13      A.   No, sir.  At that time, that wasn't
14 your question.  Is that -- that I understood he was
15 protesting, that he was talking about his protests
16 with the signs.  You asked if I knew if he had
17 engaged in that behavior -- public behavior, and I
18 said yes.
19      Q.   Okay.  So when he's referring to it in
20 the speech, you understood what he was talking about,
21 didn't you?
22      A.   I wasn't paying that close of attention
23 to what he was saying, sir.
24      Q.   Let me ask you this:  If you believed
25 that the mayor told you to tase somebody, but in your

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 46

1  independent judgment you didn't think it was
2  warranted to rise to that level of force, you would
3  ignore the mayor's command, would you not?
4         A.  I would not ignore it.  I would listen
5  to it.  I would take it into consideration, but I
6  wouldn't necessarily follow it.
7         Q.  Okay.  And if the mayor is violating
8  someone's right to free speech and their right to
9  petition their government for redress based on the
10 content of their speech, would you go ahead and do
11 whatever the mayor tells you to do on that count?
12 Meaning, if the mayor tells you, Arrest that man, I
13 don't like the message he's delivering to the City
14 council, would you do it?
15             MR. MARKS:  Object to the form of the
16 question.
17        A.  There's several questions.
18        Q.  (By Mr. Lane)  Let me backtrack then.
19        A.  Please.
20        Q.  Somebody starts making a speech to the
21 City council about police brutality, and the mayor
22 says, I oppose your comments about police brutality,
23 I'm not allowing you to talk about police brutality.
24 And if the person continues to talk about police
25 brutality at an open mike at a City council meeting,

Eric Brandt vs.　　　　　　　　　　　　　　　　Deposition of Paul E. Newton
The City of Westminster, Colorado, et al.　　　　September 17, 2015

Page 50

```
 1          A.   No, sir.
 2          Q.   Okay.  Have you been told by your
 3   superiors that you did exactly the right thing?
 4          A.   Yes, sir.
 5          Q.   And have you been told by your
 6   superiors that if the situation ever arose again, you
 7   should do exactly the same thing?
 8          A.   Yes, sir.
 9          Q.   Okay.  Who are your superiors that told
10   you that?
11          A.   Commander Milano, Commander Wilson,
12   Deputy Chief Carlson, and Chief Burke.
13          Q.   Okay.  And you did this at the behest
14   of the mayor, correct?
15          A.   I don't know -- I don't know if I
16   understand behest.
17          Q.   The mayor beckoned you to take action
18   against Eric Brandt, didn't he?  He made some gesture
19   to you or he communicated to you, You need to remove
20   this guy?
21          A.   No, sir.
22          Q.   You just did that all by yourself, on
23   your own?
24          A.   No, sir.
25          Q.   Well, how is it you got motivated to
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 53

```
 1   speech, the mayor was trying to stop him from saying
 2   what he wanted to say, right?
 3            A.   In that forum, yes, sir.
 4            Q.   Okay.  And because Eric Brandt would
 5   not stop talking about the subject matter that he was
 6   talking about, that's when the mayor signaled you to
 7   remove him, correct?
 8            A.   No, sir.
 9            Q.   When -- why did the mayor -- based on
10   your observations, what did you think the mayor was
11   having him removed for?
12            A.   I didn't think he was instructing me to
13   remove him.
14            Q.   Well, what was he instructing you to
15   do?
16            A.   As I said, to take some form of action.
17            Q.   Right.  And ultimately, what action did
18   you take?
19            A.   Ultimately, after I attempted to
20   encourage Eric to stop and leave on his own, then
21   eventually I had no choice, because he failed to
22   comply with my request, my instructions.  I
23   eventually had to escort him from the meeting.
24            Q.   Well, you didn't just escort him from
25   the meeting, you put handcuffs on him and you took
```

Eric Brandt vs.  
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton  
September 17, 2015

Page 54

```
 1   him to jail, didn't you?
 2        A.   After -- but not in the meeting, sir.
 3        Q.   You escorted him from the meeting and
 4   you then put handcuffs on him and took him to jail,
 5   didn't you?
 6        A.   Yes, sir.  Yes, sir.  No, sir.
 7        Q.   You escorted him from the meeting,
 8   didn't you?
 9        A.   Yes, sir.
10        Q.   You put handcuffs on him, didn't you?
11        A.   Yes, sir.
12        Q.   He was under arrest at that point?
13        A.   Yes, sir.
14        Q.   And you charged him with charges, did
15   you not?
16        A.   Yes, sir.
17        Q.   And then where did you take him?
18        A.   To the courtyard.
19        Q.   And at some point he ended up in jail,
20   did he not?
21        A.   Yes, sir.
22        Q.   How did he get to jail?  Do you know?
23        A.   He was transported there by
24   Officer Smith of the Westminster Police Department.
25   I didn't take him to jail, sir.
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 55

```
 1        Q.   Okay.  Did the mayor tell you to arrest
 2   him?
 3        A.   No, sir.
 4        Q.   You took it upon yourself to decide,
 5   I'm arresting him, because I have probable cause to
 6   believe he's committed some crimes, right?
 7        A.   Yes, sir.
 8        Q.   And the crimes that he committed were
 9   failing to yield the podium upon the order of the
10   mayor?  That's what led you to ask him to leave the
11   building, right?
12             MR. MARKS:  Object to the form of the
13   question.
14        Q.   (By Mr. Lane)  Let me backtrack on
15   that.  It was the content of his speech that got him
16   in trouble with the mayor?  You would agree with
17   that, right?
18        A.   No, sir.  I wouldn't use "got him in
19   trouble."  No, sir.
20        Q.   It was the content of his speech that
21   caused the mayor to signal you to remove him from the
22   podium, correct?
23        A.   No, sir.
24        Q.   Why did the mayor signal you to remove
25   him from the podium?
```

Eric Brandt vs.
The City of Westminster, Colorado, et al.

Deposition of Paul E. Newton
September 17, 2015

Page 58

```
 1   City council chamber.
 2         Q.   By doing what?
 3         A.   By doing what I could to help him
 4   regain order in his meeting.
 5         Q.   By doing what?
 6         A.   By intervening.
 7         Q.   What was your intervention?
 8         A.   I slowly approached Eric.  I asked him
 9   to please stop and to acquiesce to the mayor's
10   instructions.
11         Q.   And he didn't, did he?
12         A.   No, sir.
13         Q.   So what did you do then?
14         A.   I believe I may have tried to encourage
15   him again to please leave.
16         Q.   Ultimately, what did you do?
17         A.   I escorted him from the meeting.
18         Q.   And you've already said you used force
19   to get him away from that podium and out of the
20   meeting, correct?
21         A.   Yes, sir.  I escorted him from the
22   meeting.  Yes, sir.
23              MR. RICE:  Note my objection to the
24   repetitive nature of the examination at this point.
25              MR. LANE:  I understand.  The questions
```

| Eric Brandt vs. | Deposition of Paul E. Newton |
|---|---|
| The City of Westminster, Colorado, et al. | September 17, 2015 |

Page 60

```
 1            A.   Yes, sir.  No, sir.  Yes, sir.
 2            Q.   It's one question.  There are no three
 3   questions there.  You have to exercise your own
 4   independent judgment as a police officer before you
 5   take any action, don't you?
 6            A.   Yes, sir.
 7            Q.   All right.  That would include
 8   arresting someone, wouldn't it?
 9            A.   I'm sorry, I didn't know...
10            Q.   You have to use your own independent
11   judgment before you determine whether or not to
12   arrest someone, correct?
13            A.   Yes, sir.
14            Q.   And in your judgment, in your
15   independent judgment, is it legal to arrest someone
16   in retaliation for their speech?
17            A.   No, sir.
18            Q.   All right.  Based on your training and
19   experience, is it legal for Eric Brandt to continue
20   his speech, despite the mayor telling him, Stop
21   talking?
22                 MR. MARKS:  Object to the form of the
23   question.
24            A.   Yes, sir.
25            Q.   (By Mr. Lane)  Do you believe the
```