**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02994-WYD-NYW

ERIC BRANDT,

      Plaintiff,

v.

THE CITY OF WESTMINSTER, COLORADO, a municipality,

MAYOR HERB ATCHISON, in his official and individual
capacity, and

WESTMINSTER POLICE OFFICER PAUL E. NEWTON, in
his official and individual capacity,

      Defendants.

_____

**DEFENDANT PAUL E. NEWTON'S MOTION FOR SUMMARY JUDGMENT**
_____

      Defendant Paul E. Newton ("Officer Newton"), by and through his undersigned counsel, hereby requests that the Court grant summary judgment in Officer Newton's favor on Plaintiff Eric Brandt's claims under the First and Fourth Amendments, and states as follows:

<u>**Introduction**</u>

      On August 11, 2014, Officer Newton was working at a public meeting of the Westminster City Council. He was there to "intervene in case something should happen and [his] services as a police officer were required." He stood in the back of the room and focused his attention on Mayor Herb Atchison, who was chairing the meeting.

One agenda item at the meeting was a "citizen communication" period; during this time, anyone attending the meeting could address the City council for five minutes. The first speaker was Plaintiff Eric Brandt.

Roughly one minute into his comments, the Mayor interrupted Mr. Brandt to ask him where his comments were headed; the Mayor expressed concern that the City Council could not hear remarks about a pending lawsuit that Mr. Brandt had filed against the City. Mr. Brandt ignored the Mayor's repeated questions. He ignored the Mayor's attempt to regain control of the proceeding by banging his gavel. And he ignored the Mayor's eventual instructions to stop and leave the podium.

During this confrontation, the Mayor summoned Officer Newton from the back of the room. Officer Newton had not been paying close attention to the substance of Mr. Brandt's public comments, but it appeared that Mr. Brandt was disrupting the meeting by refusing to respond to the Mayor's questions or comply with his directives. When Officer Newton arrived at the podium, the Mayor instructed Officer Newton that Mr. Brandt needed to leave; he specifically told Officer Newton that the City Council could not hear his comments given Mr. Brandt's pending lawsuit with the City. Officer Newton calmly asked Mr. Brandt to leave, and told him that if he did not leave, he would be arrested for a misdemeanor. Again, Mr. Brandt ignored Officer Newton and continued to deliver his comments. Officer Newton escorted him out of the meeting and arrested him for two state law violations: (1) Public Buildings Trespass and Interference and (2) Disrupting Lawful Assembly.

Mr. Brandt has filed claims against Officer Newton under 42 U.S.C. § 1983. Specifically, he has alleged that Officer Newton "unlawfully arrested him in violation of the First Amendment…and in retaliation for the content of the message he was attempting to deliver regarding police abusing the civil rights of the citizens in Westminster." (Compl. ¶ 25.) He has also alleged that Officer Newton arrested him "without probable cause to believe he had committed any offense," in violation of the Fourth Amendment. (*Id.* ¶ 28.)  Based on undisputed circumstances leading up to the arrest, Officer Newton had a reasonable basis to believe that Mr. Brandt had committed a crime. Officer Newton is therefore protected by qualified immunity from these claims.

## Movant's Statement of Material Facts

### A.    Plaintiff Eric Brandt.

1.    Mr. Brandt protests against police brutality in the City of Westminster. (*See, e.g.*, Dep. Tr. of Eric Patrick Brandt, attached as Exhibit A, at 8, ll. 6–18; 81, ll. 19–25; 82, ll. 1–14.)

2.    He travels around the City with a large sign shaped like a middle finger, which reads "f--k cops." (*See id.*; *see also* photographs disclosed by Plaintiff, attached as Exhibit B.) Mr. Brandt had suspended his protests for a period of "about two months" leading up to August 11, 2014, in what he referred to as "a ceasefire agreement" with the City. (Ex. A at 8, ll. 6–14.)

3.    By August 11, 2014, Mr. Brandt was planning on resuming his protests; he attended a City Council meeting that day to announce his decision. (*Id.* at 81, ll. 19–25; 82, ll. 1–14.)

3

**B.      The August 11, 2014 City Council meeting.**

4.      On August 11, 2014, the Westminster City Council held a public meeting. (Compl. ¶ 8; Def. Paul E. Newton's Answer to Compl. ("Answer") ¶ 8.) There is an audio recording of the meeting. (*See* audio file of meeting, referred to as Exhibit C.[1])

5.      Mr. Brandt attended the meeting. (*See* Ex. A at 15, ll. 21–24.)

6.      Officer Newton was working the meeting; he was there "[t]o stand and intervene in case something should happen and [his] services as a police officer were required." (Dep. Tr. of Paul E. Newton, attached as Exhibit D, at 7, ll. 7–10.) Officer Newton had served in this capacity at other meetings in the past. (*See id.* at 26, ll. 13–16.)

7.      Officer Newton testified that he knew of Mr. Brandt before he began to speak at the City Council meeting. (*Id.* at 14, ll. 5–7.) He also acknowledged that he knew that Mr. Brandt went around the City with a "f--k cops" sign. (*See id.* at 14, ll. 8–11; *see also id.* at 44, ll. 21–24.)

8.      During the meeting, Officer Newton stood in the back corner of City council chambers. (Affidavit of Paul. E. Newton, attached as Exhibit E, ¶ 4; *see also* Ex. A at 93, ll. 7–19.)

9.      Pursuant to Westminster ordinance, the mayor is the "presiding officer of the City Council." *See* W.M.C. § 1-10-3(A). Accordingly, Mayor Herb Atchison chaired

---

[1] Exhibit C is an audio file produced by Mr. Brandt as part of his Fed. R. Civ. P. 26(a)(1) disclosures, and identified by Mr. Brandt as "Audio from the City Council Meeting on August 11, 2014." This appears to be the same audio file that Officer Newton and the City produced in their own disclosures. Mr. Brandt testified that the audio recording—as it relates to the interaction between him, the Mayor, and Officer Newton—is "very accurate." (Ex. A at 88, l. 25; 89, ll. 1–7.) A copy of the audio file on a thumb drive is begin delivered to the clerk's office as conventionally-submitted material in accordance with D.C.COLO.LCivR 5.1(b)(1).

the City Council meeting on August 11, 2014. (Ex. A at 86, ll. 24–25; Ex. D at 26, ll. 11–16.)

10.     Mr. Brandt attended the meeting with the intent to speak during the "public comment" section of the proceedings. (Ex. A at 9, ll. 18–21; *see also* Ex. C at 28:30.[2]) He had prepared his remarks in advance; with those remarks, he wanted to let the City Council know of his decision to resume his protests, and he was intending to discuss "a history of police misconduct with Westminster." (Ex. A at 81, ll. 19–25; 82, ll. 1–14; 9, ll. 22–25; 10, ll. 1–3.)

11.     When it was time for the public comment agenda item, the Mayor informed everyone that all comments would be limited to five minutes. (*Id.* at 87, ll. 6–15.)

12.     Mr. Brandt took the podium, introduced himself, and said that his remarks would run approximately eight minutes; he advised the City Council that one of his friends was going to give up his five minutes so that Mr. Brandt could complete his speech. (*Id.* at 16, ll. 3–10.) The Mayor instructed Mr. Brandt that "no one gives up time for anyone else," and then told Mr. Brandt that he could begin his comments. (*Id.*)

13.     After Mr. Brandt had been speaking for just over one minute, the Mayor interrupted him and asked if his comments were going to be saying anything at all connected with his pending lawsuit with the City. (*Id.* at 16, ll. 11–20.)

14.     At his deposition, the Mayor was asked why he interrupted Mr. Brandt with this question; the Mayor testified: "It is my understanding that when we are hearing this

---

[2] Exhibit C includes the audio of the entire meeting; the designations in the citations refer to the time mark on the audio recording.  The Mayor announces the public comment period beginning at 28:30, and Mr. Brandt begins to speak at 29:04.

at a City council meeting, if it's something we're going to take action on, that is pending, that we would be doing that with our attorneys present and the other parties present." (Dep. of Mayor Herbert L. Atchison, attached as Exhibit F, at 15, ll. 7–11.)

15.    Mr. Brandt did not answer the Mayor's question, and instead "advised [the Mayor] not to use up [his] five minutes." (Ex. A at 16, ll. 21–25; 17, ll. 1–5.) The Mayor repeated the question multiple times; Mr. Brandt refused to respond because he felt that the Mayor did not have the authority to interrupt him. (*See id.* at 16, ll. 21–25; 17, ll. 1–5; 90, ll. 13–17.)

16.    The Mayor then used his gavel and told Mr. Brandt to stop his remarks. (*Id.* at 92, ll. 3–5; 94, ll. 6–9; *see also* Ex. C at 30:50.) Mr. Brandt "raised [his] voice to speak over [the Mayor]." (Ex. A at 92, ll. 3–5.) As Mr. Brandt continued to ignore the Mayor's instructions to stop, the Mayor then requested that Mr. Brandt remove himself from the podium area where he was addressing the City council. (Ex. C at 31:18.)

17.    During this exchange, the Mayor had summoned Officer Newton from the back of the room. (*See* Ex. E ¶ 5.)

18.    Officer Newton was not paying attention to the content of Mr. Brandt's presentation; he was paying attention to the Mayor. (Ex. D at 26, ll. 5–22.)

19.    After being summoned by the Mayor, Officer Newton approached the podium and stood beside Mr. Brandt. (Ex. A at 95, ll. 6–9; *see also* Ex. E ¶ 5.) The Mayor told Mr. Brandt that he could leave or go outside, but that he had to stop his testimony because of his pending lawsuit. (Ex. A at 96, ll. 17–19; *see also* Ex. C at

31:23 ("[A]t this point, his testimony, we cannot hear it with his pending lawsuit with the City.").)

20.     Officer Newton also advised Mr. Brandt that the Mayor had asked him to leave. (Ex. A at 96, ll. 4–7.) Mr. Brandt interpreted this as "an indirect request…from the mayor." (*Id.* at 96, ll. 10–12.)

21.     Officer Newton also told Mr. Brandt that, if he didn't leave, he would be arrested for a class 2 misdemeanor. (*Id.* at 97, ll. 3–6.)

22.     Officer Newton asked Mr. Brandt to leave "[b]ecause [he] received directions from the Mayor…to address the problem that was occurring…in the City council meeting." (Ex. D at 9, ll. 9–15.) He then described the "problem" as the fact that Mr. Brandt "would not follow the decorum, the procedures, and interfered with the procedures that the mayor was attempting to implement." (*Id.* at 9, l. 25; 10, ll. 1–2.)

23.     In response to Officer Newton's instruction to leave, Mr. Brandt immediately resumed his speech. (Ex. A at 97, ll. 9–11.)

24.     The Mayor then instructed Officer Newton to remove Mr. Brandt. (*See* Plaintiff's Response to Discovery, attached as Exhibit G, at 13 (admitting "that Mayor Atchison told Officer Newton to remove [Mr. Brandt] from the Westminster City Council meeting"); *see also* Ex. C at 31:39.) Officer Newton twice more asked Mr. Brandt to leave the podium area, but Mr. Brandt ignored those requests. (*See* Ex. C at 31:39.)

25.     Officer Newton then escorted Mr. Brandt out of the building using a wrist lock maneuver. (Ex. A at 98, ll. 16–22; Ex. E ¶ 6.)

26.     Officer Newton arrested Mr. Brandt for violations of C.R.S. § 18-9-110(3) (Public Buildings Trespass and Interference) and C.R.S. § 18-9-108(1) (Disrupting Lawful Assembly). (Ex. E ¶ 7; *see also* Ex. C at 31:52.)

27.     Officer Newton did not believe that Mr. Brandt committed these crimes "by saying the things that he was saying." (Ex. D at 27, ll. 5–8.) Rather, Officer Newton took action because he "observed [Mr. Brandt's] failure to follow the process/procedure of the City council meeting that the mayor was attempting to enforce." (*Id.* at 31, ll. 9–12.) Officer Newton believed that, by interrupting Mr. Brandt, the Mayor was "making a point of order in the meeting, which he's responsible for maintaining order in." (*Id.* at 33, ll. 5–8; *see also id.* at 29, ll. 13–14 (noting that "[t]he mayor was attempting to maintain order in the City council meeting"); 31, ll. 17–19 (same).)

28.     Mr. Brandt was ultimately charged with violations of the Westminster Municipal Code. (*See* Ex. E ¶ 8.) The decision to charge Mr. Brandt with municipal violations (versus crimes under state law) was made by Officer Newton's supervisor. (*Id.*)  The charges against Mr. Brandt were eventually dismissed. (Ex. A at 22, ll. 17–20.)

## Legal Standards for Qualified Immunity

Government officials performing discretionary functions enjoy qualified immunity from liability under 42 U.S.C. § 1983. *E.g.*, *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997). The doctrine protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

(2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks omitted).

Given these standards, qualified immunity is designed to "give[] government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244–45 (2012) (internal quotation marks omitted). It "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted).

Federal courts apply a unique standard of review when qualified immunity is raised at the summary judgment stage. *E.g.*, *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). The plaintiff initially bears a "heavy, two-part burden"; he must "establish (1) a violation of a constitutional right (2) that was clearly established." *Id.*[3] On summary judgment, "the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendant[] is entitled to qualified immunity." *Id.*

## Argument

### A.   Officer Newton is protected by qualified immunity from Plaintiff's Fourth Amendment unlawful arrest claim because he had arguable probable cause to arrest Plaintiff.

A Fourth Amendment claim for unlawful arrest requires a plaintiff to plead and prove the absence of probable cause to arrest. Officer Newton had arguable probable cause to arrest Mr. Brandt; he is therefore entitled to qualified immunity.

---

[3] Trial courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

    *1.     Qualified immunity standards for a Fourth Amendment claim.*

"In the context of a qualified immunity defense on an unlawful…arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the" arrest. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Under this standard, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).

    *2.     Probable cause standards.*

Probable cause "does not…require the suspect's guilt to be 'more likely true than false.'" *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011). Instead, it exists when an officer has "a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). Courts evaluate probable cause by "examin[ing] the events leading up to the arrest, and then decid[ing] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (internal quotation marks omitted). The court's inquiry[4] "is an independent and objective one. Thus an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).

    *3.     Officer Newton had reasonable grounds to believe that Plaintiff had violated C.R.S. § 18-9-110(3)—Public Buildings Trespass and Interference; he is therefore entitled to qualified immunity.*

---

[4] "In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014); *cf. Keylon v. City of Albuquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008) (stating that, although "probable cause is usually a question for the jury, a court should decide it when there is no genuine issue of material fact").

Under Colorado law, C.R.S. § 18-9-110(3) makes it a crime to

> [1] willfully refuse or fail to leave any…public building [2] upon being requested to do so by the chief administrative officer or his designee charged with maintaining order in such public building, [3] if the person has committed [or] is committing…any act which did, or would if completed, disrupt, impair, interfere with, or obstruct the lawful missions, processes, procedures, or functions being carried on in the public building.

Officer Newton had "a reasonable ground [to] belie[ve]" that Mr. Brandt violated this law. *See Pringle*, 540 U.S. at 371. The first two elements of the offense provide that the accused must "willfully refuse or fail to leave…[a] public building upon being requested to do so by the chief administrative officer or his designee." C.R.S. § 18-9-110(3). It is undisputed that the Mayor requested that Mr. Brandt leave multiple times. Mr. Brandt testified at his deposition that the Mayor told him to leave or go outside. (Statement of Material Facts ("SMF") ¶¶ 16, 19.) Officer Newton also told Mr. Brandt that the Mayor had asked him to leave, which Mr. Brandt interpreted to be "an indirect request…from the Mayor." (*Id.* ¶ 20.) The audio recording confirms this account of the events. (*See* Ex. C at 29:02–31:55.)

Next, all parties agree—and Westminster code confirms—that the Mayor was in charge of the proceedings. (SMF ¶ 9.) Given Mr. Brandt's failure to comply with these instructions from the chairperson of the meeting, Officer Newton had a reasonable basis to believe that Mr. Brandt "willfully refuse[d] or fail[ed] to leave…[a] public building upon being requested to do so by the chief administrative officer or his designee."

Officer Newton also had probable cause to believe that Mr. Brandt violated the final portion of the statute by "disrupt[ing], impair[ing], interfer[ing] with, or obstruct[ing]

the lawful missions, processes, procedures, or functions" of the City Council meeting. During the meeting, the Mayor expressed concern that (1) Mr. Brandt had a pending lawsuit with the City, and (2) the City Council could not hear anything related to such a lawsuit in that forum. (*Id.* ¶¶ 13, 14, 19.) Whether the Mayor's concerns were accurate is not the relevant inquiry. Instead, the question is whether a reasonable officer—based on all the surrounding circumstances, including the Mayor's statements as chairperson of the meeting—would have had a basis to believe that Mr. Brandt violated the statute.

The undisputed facts support such a finding. Officer Newton testified that he "observed [Mr. Brandt's] failure to follow the process/procedure of the City council meeting that the mayor was attempting to enforce." (*Id.* ¶ 27.) A reasonable officer in Officer Newton's position could have easily reached this conclusion in two ways. First, Mr. Brandt was violating what, according to the Mayor, was a restriction on the City Council's ability to hear from a plaintiff regarding a lawsuit where the City was the defendant. Second, Mr. Brandt refused to answer questions and follow instructions from the undisputed chair of the meeting.

It was reasonable for Officer Newton to assume that the Mayor knew—better than anyone—the rules of a City Council meeting, including any limitations on what the City Council could and could not hear in that forum. *See Coburn v. Nordeen*, 72 F. App'x 744, 747 (10th Cir. 2003) ("[P]ublic officials are entitled to draw reasonable inferences from the facts they possess at the time."). The Mayor unequivocally stated that the City Council was prohibited from hearing a plaintiff discuss a pending lawsuit. (SMF ¶¶ 13, 14, 19.) The Mayor tried to engage Mr. Brandt on this issue, but Mr. Brandt

refused to acknowledge the Mayor's questions—let alone answer them. (*Id.*) The Mayor banged his gavel, and Mr. Brandt ignored that as well. (*Id.* ¶ 16.) Both men raised their voices. (*Id.*) The Mayor eventually told Mr. Brandt to stop his comments, reiterating that the City Council "cannot hear this with [Mr. Brandt's] pending lawsuit." (*Id.* ¶ 19.) The chairperson of the meeting explained the situation to Officer Newton, and said that Mr. Brandt "can go outside, or he can go outside the building, but at this point…his testimony, *we cannot hear it with his pending lawsuit with the City*." (*See id.*)

Importantly, the Mayor did not instruct Officer Newton to arrest Mr. Brandt, and Officer Newton was not blindly following such an order. Rather, the situation before him provided arguably reasonable grounds to believe that Mr. Brandt had violated a criminal statute by disrupting the lawful process and procedures of the public comment portion of the City Council meeting.[5]

> 4.  *Officer Newton had reasonable grounds to believe that Plaintiff had violated C.R.S. § 18-9-108(1)—Disrupting Lawful Assembly; he is therefore entitled to qualified immunity.*

Officer Newton also had arguable probable cause to arrest Mr. Brandt for violating C.R.S. § 18-9-108(1). The statute provides that a person commits this violation

> if, intending to prevent or disrupt any lawful meeting, procession, or gathering, he significantly obstructs or

---

[5] The existence of probable cause in this situation is highlighted by Officer Newton's alternative choice.  If Officer Newton had refused to act, he would have been forced to make a determination that the City Council *could* hear testimony about a pending lawsuit—a position that would have been directly at-odds with the government official who's very job it was to preside over the City Council and maintain order in its meetings.  His choice was to either remove Mr. Brandt or force the City Council to hear comments in the face of the Mayor's ruling.  Qualified immunity protects police officers from these situations.  *Cf. Pierson v. Ray*, 386 U.S. 547, 555 (1967) ("A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.").

> interferes with the meeting, procession, or gathering by physical action, verbal utterance, or any other means.

Again, the official presiding over the public meeting had repeatedly asked Mr. Brandt a question—i.e., whether his comments were going to address a pending lawsuit. (SMF ¶ 13.) Rather than participate in what appeared to be a straightforward conversation with the Mayor, Mr. Brandt chose to be nonresponsive ("I would encourage you not to use up my five minutes") and then ignored the Mayor, raised his voice, and talked over any attempt to engage him in conversation. (*Id.* ¶¶ 15, 16.) He refused to yield the floor or stop his presentation. (*Id.*) To an officer observing this exchange, it would have been reasonable to assume that Mr. Brandt was trying to undermine the Mayor's attempt to run the public comment period by creating unnecessary confrontation rather than answering a simple question. From Officer Newton's perspective, it was reasonable to believe that Mr. Brandt was "intend[ing] to…disrupt [a] lawful meeting" by "interfer[ing] with the meeting…by verbal utterance."

Officer Newton had arguable probable cause to believe that Mr. Brandt had committed two crimes; he is entitled to qualified immunity on Mr. Brandt's Fourth Amendment claim.

**B.    Officer Newton is entitled to qualified immunity on Plaintiff's First Amendment claims because there is no clearly established right to be free from a retaliatory arrest that is supported by probable cause.**

There is no clearly-established First Amendment right to be free from an arrest supported by probable cause. Officer Newton is therefore entitled to qualified immunity.[6]

---

[6] Mr. Brandt's complaint includes two First Amendment claims under § 1983: one for "First Amendment Violation Regarding Free Speech," and a second for "First Amendment Retaliation for Free Speech." (Compl. ¶¶ 18–22, 23–26.)  Both claims, as they relate to Officer Newton, allege the same retaliatory

1.   There is no "clearly established" First Amendment right to be free from a retaliatory arrest that is supported by probable cause.

To overcome qualified immunity, a plaintiff must show that the constitutional right at issue was "clearly established" at the time of his arrest. *E.g.*, *Puller*, 781 F.3d at 1196. A right is "clearly established" only if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (internal quotation marks omitted). To meet this standard, "existing precedent must have placed the…constitutional question beyond debate." *Id.*

The Supreme Court recently held that there is no clearly-established First Amendment right to be free from a retaliatory arrest that is supported by probable cause. In *Reichle v. Howards*, 132 S. Ct. 2088 (2012), the plaintiff had approached Vice President Dick Cheney at a mall in Beaver Creek, told him that "his policies in Iraq are disgusting," and touched him on the shoulder as the Vice President walked away. *Id.* at 2091. When the plaintiff was questioned by Secret Service agents, he lied about having touched the Vice President. *Id.* He was arrested, handed over to local authorities, and charged with harassment under state law. *Id.* at 2092. The charges were eventually dismissed. *Id.*

The plaintiff pursued § 1983 claims against the agents involved in his arrest. *Id.* Much like the complaint in this litigation, he alleged (1) "that he was arrested and searched without probable cause, in violation of the Fourth Amendment," and (2) that "he was arrested in retaliation for criticizing the Vice President, in violation of the First

---

activity—i.e., the arrest.  (*Id.* ¶¶ 20 ("The arrest of Plaintiff Brandt was a denial of his right to free speech guaranteed by the First Amendment…."), 25 ("Because the Defendants disapproved of Mr. Brandt's message, they unlawfully arrested him in violation of the First Amendment….").)  The qualified immunity analysis therefore applies to both claims.

Amendment." *Id.* On summary judgment, the agents argued that they were entitled to qualified immunity on the First and Fourth Amendment claims; the district court denied their motion. *Id.*

The agents appealed that decision. The Tenth Circuit concluded that the agents enjoyed qualified immunity on the Fourth Amendment claims because they had probable cause to arrest the plaintiff for "making a materially false statement to a federal official in violation of 18 U.S.C. § 1001." *Id.* The appellate court, however, rejected the agents' argument that probable cause also afforded the agents qualified immunity on the First Amendment claims of retaliatory arrest. *Id.*

The Supreme Court granted certiorari to review the latter ruling. The Court reversed the decision; it held that, at the time of the arrest (i.e., June 16, 2006), "it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation." *Id.* at 2097. The agents were therefore entitled to qualified immunity on the First Amendment claim because they had probable cause to arrest the plaintiff for making a materially false statement to federal officials. *Id.*

The state of the law remains unchanged since *Reichle*. After that decision, neither the Supreme Court nor the Tenth Circuit have hinted at—let alone "clearly established"—a First Amendment right to be free from a retaliatory arrest that is supported by probable cause. In fact, post-*Reichle* courts in the Tenth Circuit have continued to recognize that the alleged right (if it exists at all) is not "clearly established." *E.g.*, *Wilson v. Vill. of Los Lunas*, 572 F. App'x 635, 642 (10th Cir. 2014) ("[I]t is not clear whether a First Amendment retaliatory arrest claim requires a plaintiff to show a

lack of probable cause."); *Moral v. Hagen*, 533 F. App'x 839, 840 (10th Cir. 2014) ("Because this scenario (retaliatory animus but objective probable cause) does not offend clearly established law, the Supreme Court granted qualified immunity to the officers in *Reichle*....We see no lawful way the district court could have reached a different result in this case.").[7]

> 2. *Officer Newton had objectively reasonable grounds to believe that Plaintiff had committed a crime; he is therefore entitled to qualified immunity.*

For all of the reasons mentioned above, Officer Newton had objectively reasonable grounds to believe that Mr. Brandt had violated C.R.S. § 18-9-110(3) and C.R.S. § 18-9-108(1). (*See* sections A.3, A.4, above.) Since there is no clearly-established First Amendment right to be free from a retaliatory arrest that is supported by probable cause, Officer Newton is entitled to qualified immunity.

Cases from across the country have recognized that officers should not be exposed to civil damages in similar circumstances. For instance, in *Leonard v. Robinson*, the Sixth Circuit held that "no reasonable officer would find that probable cause exists to arrest a recognized speaker at a chaired public assembly based solely on the content of his speech...*unless and until the speaker is determined to be out of order by the individual chairing the assembly.*" *See* 477 F.3d 347, 361 (6th Cir. 2007) (emphasis added). Once that determination is made, however, it follows that a

---

[7] *See also Ronkin v. Vihn*, 71 F. Supp. 3d 124, 137 (D. D.C. 2014) (recognizing that the Eighth, Tenth, Seventh, and D.C. Circuits have all used the *Reichle* decision "as the basis for upholding the dismissal of First Amendment retaliatory arrest claims when arrests were supported by probable cause"); *Dukore v. D.C.*, 2015 U.S. App. LEXIS 14935 (D.C. Cir. Aug. 25, 2015) ("The Supreme Court has 'never held that there is [a First Amendment right to be free from retaliatory arrest].' *Reichle*, 132 S. Ct. at 2094. Nor was there in February 2012 (nor is there now) any settled consensus view in this court or other federal courts of appeals such that 'the statutory or constitutional question' has been placed 'beyond debate.'").

reasonable police officer would be entitled to rely on the decision of the meeting's chair. *See id.*; *see also Bernard v. Detroit Pub. Sch. Dist.*, 2015 U.S. Dist. LEXIS 59108, at *24 (E.D. Mich. May 6, 2015) (recognizing that arresting officers "could reasonably have relied on [the meeting chairperson]'s determination that [the speaker] was out of order" during public comment section of a meeting).

Likewise, in *Collinson v. Gott*, the Fourth Circuit addressed a claim involving a speaker at a public meeting of a board of county commissioners. *See* 895 F.2d 994, 995 (4th Cir. 1990). A citizen began to address the board; the president of the board quickly ruled him out of order and "ask[ed] the Deputy to remove [the speaker]." *Id.* at 996. The deputy "approached [the speaker], lightly touched him on the arm and told him that he would have to leave"; he then escorted the speaker out of the room. *Id.* at 997. The speaker filed First Amendment claims against the president and the two deputies who were working at the meeting. *Id.*

While the Fourth Circuit panel was split on whether the president was entitled to immunity on summary judgment, "the panel…unanimously agreed that" qualified immunity protected the deputies. *Id.* As one concurring opinion put it:

> The district court properly granted the motions of [the deputy] officers…for summary judgment on the basis of qualified immunity. Their conduct was taken courteously and in obedience to a presumably valid order of an official presiding over a public hearing which they had been directed to attend to enforce such orders as he might give them. Reasonable officers in their positions would have no basis for believing that under the circumstances their conduct would violate [the plaintiff's] constitutional rights.

*Id.* at 1004–05 (Phillips, J., concurring).[8]

"Police officers are not constitutional lawyers, and they should not have to fear personal damages liability when they enforce the plain terms of" a criminal law. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009). Here, Officer Newton reasonably believed that Mr. Brandt had violated two criminal statutes. He is thus protected by qualified immunity against Plaintiff's First Amendment claims.

**C.   Officer Newton is entitled to qualified immunity on Plaintiff's First Amendment claims because there is no evidence that his decision to arrest was substantially motivated by the content of Plaintiff's speech.**

Even if Mr. Brandt could make the necessary showings that (1) there was a "clearly established" First Amendment right to be free from an arrest supported by probable cause, and (2) Officer Newton lacked probable cause to arrest Mr. Brandt, that would still only get past one hurdle of Mr. Brandt's "heavy two-part burden." *Puller*, 781 F.3d at 1196. Mr. Brandt must also make the necessary showing that Officer Newton "violated a constitutional right." *Id.* Because there is no evidence that Officer Newton's decision to arrest Mr. Brandt was substantially motivated by the content of his speech, Mr. Brandt has not met that burden.

There are three elements to a First Amendment retaliation claim. A plaintiff must establish (1) that he was "engaged in constitutionally protected activity," (2) that the defendant's actions caused him to suffer an "injury that would chill a person of ordinary

---

[8] *See also Acosta v. City of Costa Mesa*, 718 F.3d 800, 824–26, n.14 (9th Cir. 2013) (recognizing that officers were entitled to qualified immunity where they removed a speaker who refused to comply with the mayor's repeated orders to stop speaking during a public comment period of an open meeting); *Gelinas v. Boisselle*, 2011 U.S. Dist. LEXIS 122480, at *31 (D. Mass. Oct. 17, 2011) (holding that officers who removed speaker from public comment period were entitled to qualified immunity where their conduct was "in accord with presumably valid direction they received from the official presiding over the meeting").

firmness from continuing to engage in that [protected] activity," and (3) that the defendant's actions "were substantially motivated as a response to his protected conduct." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). To satisfy this third element "[a]t the summary judgment stage, some facts must demonstrate the defendant[] acted on the basis of a culpable subjective state of mind." *Stonecipher*, 759 F.3d at 1148 (internal quotation marks omitted).

In *Green v. Nocciero*, the Eighth Circuit explored a plaintiff's burden on summary judgment to support a claim that the defendant's actions were substantially motivated as a response to First Amendment-protected conduct. *See* 676 F.3d 748 (8th Cir. 2012). In that case, the plaintiff attended a public meeting held by the local school board. *Id.* at 749. He spoke during the public comment section of the meeting, and criticized the actions of the board. *Id.* at 750. Security officers had him forcibly removed from the meeting; he was eventually arrested. *Id.*

The plaintiff filed First Amendment retaliation claims against, *inter alia*, the security officers involved in his arrest. There was evidence that one of the security officers "admitted knowing [the plaintiff] was a 'well known civil rights activist'" who had spoken out at previous meetings. *Id.* The court assumed, for the sake of summary judgment, that the plaintiff "was not in fact disruptive" at the meeting. *Id.* Yet, this was not enough for the plaintiff's First Amendment claim to survive summary judgment:

> [The plaintiff] presented no facts, only his own unsupported belief, refuting the testimony by [the] security officers…that their actions were not motivated by retaliatory animus based either on [the plaintiff's] history of civil rights activism or on his remarks during the public comment portion of the November 18 meeting. Indeed, as the district court

> emphasized, after three years of discovery, Green failed to identify what speech allegedly gave rise to the alleged retaliation. Bare allegations of retaliatory animus cannot withstand a properly supported motion for summary judgment.

*Id.* at 753.

Similarly, there is no evidence to support a finding that Officer Newton was motivated to arrest Mr. Brandt because of the content of his speech. Rather, the evidence points to the fact that Officer Newton removed and arrested Mr. Brandt because of his refusal to follow what appeared to be the lawful procedures that the Mayor was trying to enforce at the meeting. (SMF ¶ 27.) Mr. Brandt has admitted "that Mayor Atchison told Officer Newton to remove [Mr. Brandt] from the Westminster City Council meeting." (*Id.* ¶ 24.) Officer Newton testified that the content of Mr. Brandt's speech had nothing to do with whether Mr. Brandt had committed a crime. (*E.g.*, ¶ 27.) Officer Newton was not even paying attention to the content of Mr. Brandt's presentation. (*Id.* ¶ 18.) Instead, Officer Newton was focusing his attention on the Mayor. (*Id.*) It was Mr. Brandt's failure to follow the Mayor's directives—and not the content of the speech—that led to the arrest.

There is no evidence that "demonstrate[s] [Officer Newton] arrested Mr. Brandt on the basis of a culpable subjective state of mind." *Stonecipher*, 759 at 1148. He has thus failed to meet his burden on summary judgment to show evidence of a constitutional violation. Officer Newton is entitled to qualified immunity.

## Conclusion

For the reasons mentioned above, Officer Newton requests that the Court grant summary judgment in his favor on all claims.[9]

Respectfully submitted this 17th day of November, 2015.

*s/ Josh A. Marks*

_____

Josh A. Marks
Jeff M. Van der Veer
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com
          jmv@bhgrlaw.com

*Attorneys for Defendant Paul E. Newton*

---

[9] In addition to the individual capacity claims, Mr. Brandt also asserts all of his claims against Officer Newton in his official capacity.  (*See* Compl. at 1 (noting, in the caption, that Officer Newton is named "in his official and individual capacity").  Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Mr. Brandt's official capacity claims against Officer Newton are thus treated as claims against the City of Westminster.  *See id.*  Because Mr. Brandt has named the City as a separate defendant in this action, the claims against Officer Newton in his official capacity are redundant and should be dismissed as a matter of judicial economy. *See, e.g.*, *Doe v. Douglas County Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991); *Davoll v. Webb*, 943 F. Supp. 1289, 1295 (D. Colo. 1996).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of November, 2015, I electronically filed the foregoing **DEFENDANT PAUL E. NEWTON'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

David A. Lane
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO  80202
dlane@kln-law.com

Thomas Rice
Courtney B. Kramer
Senter Goldfarb & Rice, LLC
1700 Broadway, Suite 1700
Denver, CO 80290
trice@sgrllc.com
ckramer@sgrllc.com

*s/ Cheryl Stasiak*
Cheryl Stasiak